# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **LANDMARK TECHNOLOGY A, LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **WOODLAND FOODS, LTD,** <br><br> Defendant. | C.A. No. <br><br> **TRIAL BY JURY DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

COMES NOW, Plaintiff Landmark Technology A, LLC ("Landmark A"), for its Complaint against Woodland Foods, Ltd. ("Defendant" or "Woodland Foods"), alleges as follows:

### THE PARTIES

1. Plaintiff Landmark Technology A, LLC ("Landmark A") is a limited liability company organized under the laws of the State of North Carolina.

2. On information and belief, Woodland Foods, Ltd. ("Woodland Foods") is a company organized under the laws of Illinois with a principal place of business located at 3751 Sunset Avenue, Waukegan, Illinois 60087. Woodland Foods operates the website https://woodlandfoods.com/, which sells food ingredients. Woodland Foods derives a significant portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Internet websites located at https://woodlandfoods.com and/or the functionality found through the "login" and "My cart" functions, and incorporated and/or related systems (collectively, the "Woodland Foods Website" or "Accused Instrumentality"). Woodland Foods has done and continues to do business in this judicial

district, including, but not limited to, providing products/services to customers located in this District through the Woodland Foods Website.

## JURISDICTION AND VENUE

3. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

4. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Woodland Foods because Woodland Foods is an Illinois corporation with its principal place of business within this District. On information and belief, Woodland Foods has transacted and is continuing to transact business in this district that includes the use of products and systems that practice the subject matter claimed in the patents involved in this action.

6. Venue is proper in this district under 28 U.S.C. § 1400(b) because Woodland Foods is incorporated in Illinois. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Further, Woodland Foods has committed acts of infringement in this district and a regular and established place of business in this district.

## FACTS

7. On March 7, 2006, the USPTO issued U.S. Patent No. 7,010,508, titled "Automated Multimedia Data Processing Network." A true and correct copy of U.S. Patent No. 7,010,508 ("the '508 Patent") is attached hereto as Exhibit A and incorporated herein by reference.

8. Specifically, the '508 Patent claims a novel automated multimedia data processing system, including an interactive multimedia terminal employing an unconventional hardware architecture enabling an inventive form of data processing according to backward-chaining and forward-chaining sequences.

9. By January 24, 1986—the priority date for the Asserted Claim of the '508 Patent—conventional "self-service terminals," such as that disclosed in U.S. Pat. No. 4,359,631

("the '631 Patent"), had "evolved to a high degree of sophistication." Ex. A, 1:37-40. A true and correct copy of the '631 Patent is attached as Exhibit B and incorporated herein by reference. In spite of their sophistication, however, conventional terminals of the day were nonetheless incapable of "the more complex types of goods and services distribution which requires a great deal of interaction between individuals and institutions." *Id.* at 1:39-44. In particular, conventional terminals were incapable of "processing" "according to backward-chaining and forward-chaining sequences," as claimed in claims 1 and 16 of the '508 Patent. Conventional terminals were also incapable of "analyzing" "operator-entered information" and "responsive to said means for analyzing," "presenting additional inquiries in response to said operator-entered information," as claimed in claim 1 of the '508 Patent. Thus, the '631 Patent—which disclosed Mr. Lockwood's prior terminal, served as the principal piece of prior art to the '508 Patent and was explicitly identified as among the most sophisticated terminals of its day—used a menu-driven approach to interact with the user. As the inventor explained during prosecution of the '508 Patent, the "procedure [of the prior art terminal disclosed in the '631 Patent] followed a rigid, pre-ordained sequence . . . following a fixed menu tree." A true and correct copy of the inventor's amendment during prosecution of the '508 Patent is attached as Exhibit C and incorporated herein by reference. *See* Ex. C at 16. "In this primitive type of interactive process, the machine need not analyze the answer because each answer leads progressively to the next predetermined step in accordance with the sequence imposed by the menu tree." *Id*. By contrast, "the claimed system" of the '508 Patent "has the novel capability of processing the answer given by the operator in combination with prior answers and/or other data to formulate or compose a new inquiry, to request other information from a central processor, or a response, and to make on-site decisions about the next operational step. The net effect and result being the operator's responses create a highly individualized, unique, 'one-of-a-kind' question and answer presentation." *Id*. at 20. While the terminal of the '631 patent used a "backward-chaining" approach, the '508 Patent "employs a type of problem solving technique known in the art as 'forward-chaining,'" a technique "associated with knowledge bases that have large numbers of

possible solutions." *Id*. at 21-24. "Because each proposed applicant" using the terminal (or "station") of the '508 Patent "will provide different answers to earlier questions, the proposed applicant may be provided with subsequent questions different from those posed to some other proposed applicant." *Id*. at 24. In other words, each user of the claimed system of the '508 Patent "will be provided with an individualized presentation." *Id*. These capabilities are reflected in the "processing" according to "backward-chaining and forward-chaining sequences" elements of claims 1 and 16, as well as the "means for analyzing" element of claim 1.

10. As a three-judge panel of the Board of Patent Appeals and Interferences unanimously recognized, the prior art terminal of the '631 Patent did "not disclose both 'backward-chaining and forward-chaining sequences.'" A true and correct copy of the Board's decision is attached as Exhibit D and incorporated herein by reference. *See* Ex. D at 5. Using both backward-chaining and forward-chaining sequences in an automated multimedia data processing system, as claimed in claim 1 and 16 of the '508 Patent, was an inventive concept and unconventional in 1986 that rendered the claims eligible under 35 U.S.C. § 101. However, in order for such a system to properly carry out an interactive presentation, it required hardware improvements enabling the terminal to support an interactive video presentation, while simultaneously receiving and transmitting data to and from a computerized installation. For example, as explained during prosecution, the "means for interactively directing" element specifically requires "selective retrieval of the data received through and from the central processor" and the "phrase 'interactively directing'" was explicitly defined as "refer[ring] to the ability of the various cited elements to 'interact,' that is to exchange information and act in accordance with received data," or data received from the central processor. Ex. C at 19. The "means for interactively directing," as limited by or in combination with the requirement for "processing" "according to backward-chaining and forward-chaining sequences" in Claims 1 and 16, required a hardware architecture capable of supporting the retrieval of data from the central processor via the data receiving and transmitting means while supporting an interactive video presentation on the video display. Such a system would then be able not only to "process[] a user

4

entry in combination with extrinsic information" obtained from the central processor (such as "the financial profile of the customer") via the data receiving and transmitting means, "but to make suggestions, or independently provide something different than what was requested but more responsive to the user's needs" and output it via the video display. *Id.* at 19-20. But, attempting to perform these functions at the same time on the prior art terminals of the early-to-mid 1980's, such as that disclosed in the '631 Patent, would have resulted in the congestion of their systems, rendering them virtually inoperable. These technical limitations of the prior art terminals were recognized by persons of ordinary skill in the art, as evidenced by the declaration of Joey A. Maitra, an engineer with extensive experience in the relevant subject matter who held multiple positions in industry during the 1980's. A true and correct copy of the Maitra Declaration is attached as Exhibit E and incorporated herein by reference.

11.  The structure used by the prior art terminal of the '631 Patent had, by 1986, become conventional. That structure, and its technical limitations, are representative terminals of the period. As shown in Figure 8 of the '631 Patent, the terminal "employs a bi-directional parallel bus oriented input/output structure." Ex. B, 4:57-59; *see* Fig. 8 below.

'631 Patent, Figure 8 – The Prior Art Terminal
and its Single, Shared Information Handling Connection



Fig. 8

This information handling connection—bus 40—was *shared* among the terminal's systems. Ex. B, 4:62-64 (noting this "structure . . . accommodate[s] the various terminal components."). This structure presented a significant technical problem: in order to provide a higher degree of interactivity appropriate to the "more complex" transactions the '508 Patent sought to carry out, the terminal's video playback and communication systems were required to operate at the same time. However, persons of ordinary skill in the art would have recognized this would have exhausted the data transfer capacity of conventional terminals. Ex. E, ¶¶ 12, 14, 23.

12. To solve these issues, the '508 Patent introduced a novel hardware improvement in the terminal (here claimed as a "station"). *See* '508 Patent, Figure 2 below.

6

**'508 Patent, Figure 2 – Unconventional Arrangement of DMA Within a Second, Independent Information Handling Connection**



As shown in Figure 2 of the '508 Patent, a DMA unit is positioned independently along its own information handling connection within the terminal, unlike the systems of the prior art. Ex. A, Fig. 2. While prior art terminals would have incorporated a DMA unit into a single information handling connection shared among their systems (as illustrated in Fig. 8 of the '631 Patent), the '508 Patent disclosed two independent information handling connections designed to prevent congestion resulting from concurrent operation of the terminal's systems ("station"). Ex. E, ¶¶ 15, 23. As the specification of the '508 Patent explains, the terminal's modem "handles a batch of information through a direct memory access [DMA] unit 16, to and from a RAM memory"—placing information directly into memory along an independent information handling connection, and not, as in the prior art, by first traversing a shared connection bogged down by other systems. Ex. A, 3:41-43; Ex. E, ¶¶ 17-19, 21-23. This unconventional hardware architecture enabled a higher level of interactivity and personalization of user transactions than possible on conventional terminals in 1986, such as those disclosed in the '631 Patent. Persons of ordinary skill in the art would have recognized that the architecture of the terminal claimed in the

'508 Patent overcame the technical limitations of conventional terminals by enabling the terminal to provide a richer interactive presentation to the user while simultaneously using its communication systems to fetch necessary data from remote sources. *See* Ex. E, ¶ 15. This unconventional hardware architecture disclosed in Figure 2 and in the specification of the '508 Patent is required throughout many of the claim elements of claims 1 and 16, particularly the "means for interactively directing," and constitutes one of the '508 Patent's "inventive concepts," rendering the claims eligible under 35 U.S.C. § 101. Another of the '508 Patent's "inventive concepts," enabled by its structure, is "an unconventional analytic technique whereby the claimed station is capable of analyzing data to determine if an additional inquiry is appropriate for presentation to the user," reflected in the "means for processing" element of claim 1. Ex. E, ¶ 19.

13. Following a reexamination of the '508 Patent, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, US 7010508 C1, that confirmed the validity of claims 1-7 and claims 16-17, while cancelling claims 8-15. A true and correct copy of the Ex Parte Reexamination Certificate is attached hereto as Exhibit F and incorporated herein by reference. The USPTO Examiner observed in confirming the validity of claims 1-7 and 16-17 of the '508 Patent that the prior art "disclosures teach away" from those claims. A true and correct copy of the Examiner's Office Action is attached hereto as Exhibit G and incorporated herein by reference. *See* Ex. G at 98. The Examiner thus rejected the third-party requester's "uncollaborated [sic] conclusions" that the combination of backward and forward-chaining techniques claimed in the '508 Patent "would have been considered obvious" or would have required "only mere software changes," and instead held claims 1-7 and 16-17 valid. *Id*.

14. Landmark A is the exclusive licensee of the entire right, title and interest in and to the '508 Patent, including all rights to enforce the '508 Patent and to recover for infringement. The '508 Patent is valid and in force.

15. As more fully laid out below, Woodland Foods has been and is infringing the '508 Patent, in this district and elsewhere, by providing its products/services using electronic

transaction systems, which, individually or in combination, incorporate and/or use subject matter claimed by the '508 Patent.

## FIRST CLAIM FOR RELIEF

### (Direct Infringement of the '508 Patent, in Violation of 35 U.S.C. § 271(a))

16. Landmark A refers to and incorporates herein by reference paragraphs 1-15.

17. Woodland Foods has directly infringed, and continues to directly infringe, at least Claim 1 of the '508 Patent in this judicial district and elsewhere in Illinois and the United States, through via electronic sales and distributions conducted on and using at least the Woodland Foods Website.

18. The Woodland Foods Website functionality referenced above is "an automated multimedia system for data processing" practicing the claims of the '508 Patent.

19. By way of example only, and without limitation, the Accused Instrumentality infringes at least Claim 1 of the '508 Patent because the Woodland Foods Website's functionality and supporting server provide a system that, when accessed by a terminal, practices all of the limitations of at least claim 1 on which Woodland Foods processes business information and places purchase orders. Landmark A illustrates Woodland Foods' infringement of claim 1 in the claim chart attached as Exhibit H and hereby incorporated by reference.

20. Further, on information and belief, Woodland Foods' Website exerts control over the transactions placed via the claimed terminal. On information and belief, when the terminal's browser accesses Woodland Foods' Website, Woodland Foods' server causes the browser to place a "cookie" on the claimed terminal, which allows users to store items in the website's shopping cart.

21. Woodland Foods is also engaged in internal use of the claimed system, by developing and testing versions of its Website on its own computers. For example, the company has been actively involved in "launch[ing]" "an e-commerce platform" for its Website. http://www.ift.org/food-technology/daily-news/2018/july/27/woodland-foods-promotes-karapetian-to-coo.aspx. In addition, Woodland Foods has actively recruited an "ecommerce

coordinator" responsible for "coordinating fulfillment activities for the Company's various ecommerce platforms." https://www.linkedin.com/jobs/view/ecommerce-coordinator-at-woodland-foods-903418744. Woodland Foods, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in this District, products and/or services embodying the invention, and has in the past and continues to infringe the '508 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

22. Woodland Foods threatens to continue to engage in the acts complained of herein and, will continue to do so, unless restrained and enjoined, all to Landmark A's irreparable injury. It would be difficult to ascertain the amount of compensation that would afford Landmark A adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required. Landmark A does not have an adequate remedy at law to compensate it for the injuries threatened.

23. By reason of the acts of Woodland Foods alleged herein, Landmark A has suffered damages in an amount to be proved at trial.

24. Landmark A is informed and believes, and on that basis alleges, that the infringement by Woodland Foods is willful, wanton, and deliberate, without license and with full knowledge of the '508 Patent, thereby making this an exceptional case entitling Landmark A to attorneys' fees and enhanced damages.

## SECOND CLAIM FOR RELIEF

**(Inducing Infringement of the '508 Patent, in Violation of 35 U.S.C. § 271(b))**

25. Landmark A refers to and incorporates herein by reference paragraphs 1-27.

26. Woodland Foods has actively and knowingly induced infringement of the '508 Patent, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its customers to utilize their own device in combination with the Woodland Foods Website, and incorporated and/or related systems, to search for and order information and products from the Woodland Foods Website in such a way as to infringe the '508 Patent.

27. For example, Woodland Foods induces its customers to infringe by encouraging them to create new accounts and to sign into their accounts using their login information to retrieve their customer information.

28. By reason of the acts of Woodland Foods alleged herein, Landmark A has suffered damages in an amount to be proved at trial.

29. Woodland Foods threatens to continue to engage in the acts complained of herein and will continue to do so, unless restrained and enjoined, all to Landmark A's irreparable injury. Landmark A does not have an adequate remedy at law.

30. Landmark A is informed and believes, and on that basis alleges, that the infringement by Woodland Foods is willful, wanton, and deliberate, without license and with full knowledge of the '508 Patent, thereby making this an exceptional case entitling Landmark A to attorneys' fees and enhanced damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Landmark A prays for relief as follows:

A. Judgment that Woodland Foods has directly infringed, and induced others to infringe, the '508 Patent either literally and/or under the doctrine of equivalents;

B. Judgment that Woodland Foods' infringement of the '508 Patent has been willful;

C. Judgment permanently enjoining Woodland Foods, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '508 Patent, and from inducing others to infringe the '508 Patent;

D. Judgment awarding Landmark A general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Woodland Foods' profits or gains of any kind from its acts of patent infringement;

E. Judgment awarding Landmark A enhanced damages pursuant to 35 U.S.C. § 284 due to the willful and wanton nature of Woodland Foods' infringement;

F. Judgment awarding Landmark A all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

G. An accounting of all damages not presented at trial;

H. Judgment awarding Landmark A pre-judgment and post-judgment interest; and

I. Judgment awarding Landmark A such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Landmark A hereby demands a trial by jury on all issues triable to a jury.

Dated: April 16, 2019

Respectfully submitted,

/s/ Isaac Rabicoff
Rabicoff Law LLC
73 W Monroe Street
Chicago, IL 60603
773-669-4590
isaac@rabilaw.com

Attorney for Plaintiff
Landmark Technology A, LLC